## DAVID J. DACRUZ *v.* STATE FARM FIRE AND CASUALTY COMPANY
### (AC 20884)

Mihalakos, Dranginis and Peters, Js.

Argued September 21, 2001—officially released May 7, 2002

*Ralph J. Monaco*, with whom, on the brief, was *Thomas J. Londregan*, for the appellant (plaintiff).

*James N. Tallberg*, with whom, on the brief, was *Donald C. Mahoney*, for the appellee (defendant).

MIHALAKOS, J. In this action, which was commenced pursuant to General Statutes § 38a-321,[1] the plaintiff, David J. DaCruz, appeals from the summary judgment rendered by the trial court in favor of the defendant, State Farm Fire and Casualty Company (State Farm). On appeal, the plaintiff claims that the trial court improperly (1) denied his motion for summary judgment and (2) granted State Farm's motion for summary judgment. The plaintiff argues that the trial court should have rendered summary judgment in his favor. We reverse the judgment of the trial court for the reasons set forth in this opinion and remand the case for further proceedings.

The following facts and procedural history are relevant to our resolution of this appeal. On January 14, 1994, the plaintiff, then a minor, was brutally beaten by a classmate, Michael Bullock, while attending Amity Regional Junior High School in Orange. On October 4, 1995, the plaintiff commenced an action, *DaCruz* v. *Amity Regional School District*, Superior Court, judi-

---

[1] General Statutes § 38a-321 provides in relevant part: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. . . . Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

cial district of Ansonia-Milford, Docket No. 0052333S (October 4, 1995) (DaCruz action),[2] seeking compensation for his injuries and alleging that Bullock intentionally and negligently had caused his injuries. State Farm retained an attorney to represent Bullock in the DaCruz action.

On April 25, 1996, State Farm brought an action for a declaratory judgment to determine if it had a duty to defend or to indemnify the Bullocks against the plaintiff's underlying claim under the terms of its homeowner's insurance contract with Curtis Bullock, Michael's father.[3] On May 30, 1997, the court, *Blue, J.,* rendered judgment declaring that State Farm did not have a duty to defend any of the Bullocks against the plaintiff's claim. The court declined, however, to render judgment declaring that State Farm did not have a duty to indemnify Bullock or his parents. No appeal was taken from that judgment.

The attorney retained by State Farm in the DaCruz action voluntarily withdrew his appearance on the basis of the judgment of the court declaring that State Farm had no duty to defend the Bullocks in that action. State Farm never sought to intervene in the DaCruz action. Thereafter, the plaintiff filed motions for default against Bullock and his parents. The court, *Curran, J.,* granted the plaintiff's motions. Thereafter, the court held a hearing in damages and, upon concluding that Bullock and his parents were jointly and severally liable to the plaintiff for $31,398 in economic damages, $93,602 in noneco-

[2] The defendants in that case were: Amity Regional School District; Stephen H. Gordon; Susan Dial; Robert Siel; Michael Bullock; Curtis Bullock and Sheila Meadows, on behalf of Michael Bullock; Chuck Kindle; Billie S. Ferris and Bernard V. Ferris, on behalf of Chuck Kindle; and the town of Orange.

[3] See *State Farm Fire & Casualty Co.* v. *Bullock,* Superior Court, judicial district of New Haven, Docket No. 0387111S (May 30, 1997) (declaratory judgment action).

nomic damages and $25,000 in punitive damages, rendered judgment for the plaintiff. The court neither filed a memorandum of decision nor signed a transcript of an oral recitation as to the basis of the judgment. Nevertheless, the court signed a judgment, which was prepared by the plaintiff, in which it concluded that Bullock had acted intentionally *and* negligently.[4] No appeal was taken from that judgment.

On April 26, 1999, the plaintiff, seeking to have the judgment in his favor satisfied, commenced the present action against State Farm pursuant to § 38a-321.[5] Through its answer and by way of special defense, State Farm alleged that (1) the incident was not covered by the policy because (a) it was not an "occurrence" as defined by the policy and (b) the policy excludes coverage for injury or damage that is expected or intended and (2) the plaintiff was barred from relitigating the underlying issues because they were previously determined in the declaratory judgment action. The plaintiff and State Farm each filed a motion for summary judgment. The court, *Levin, J.*, denied the plaintiff's motion for summary judgment and granted State Farm's motion. The court based its decision on the following three conclusions: (1) State Farm was not a party to the personal injury action that the plaintiff had commenced against the Bullocks; (2) State Farm was not in privity with a party to that personal injury action as defined in *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 695

---

[4] Specifically, the court concluded that "the conduct of the defendant Michael Bullock was an intentional assault and battery as alleged in count one of the amended complaint dated February 27, 1998, and, further, that the conduct of the defendant Michael Bullock was negligent and careless in that the defendant used an excessive and unreasonable amount of force upon the plaintiff."

[5] Under § 38a-321, the plaintiff, as a judgment creditor, has a right of action against State Farm that is equivalent to the right of action that the Bullocks would have had, had they satisfied the judgment and sought indemnification from State Farm. See footnote 1.

A.2d 1010 (1997); and (3) its review of the record of the hearing in damages conducted before the court, *Curran, J.*, revealed that "no reasonable person could but find that the assault on [the plaintiff] was no accident and, therefore, not caused by an occurrence as defined in State Farm's policy." This appeal followed.

The standard for appellate review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222, 688 A.2d 349 (1997).

On appeal, the plaintiff claims that the court, in arriving at its decision, improperly disregarded a factual finding made by Judge Curran. Specifically, the plaintiff argues that Judge Levin was bound by Judge Curran's conclusion that Bullock acted negligently when he caused the plaintiff's injuries and that State Farm was precluded from relitigating the issue of negligence. We do not agree with the plaintiff, however, that the issues

involved in this case can be resolved on the basis of collateral estoppel. Rather, § 38a-321 is dispositive of this appeal.

We first address whether the plaintiff in this action brought pursuant to § 38a-321 may assert collateral estoppel against State Farm. We hold that the plaintiff cannot.[6] Because applying collateral estoppel to State Farm would render § 38a-321 meaningless and circumvent the purposes of the doctrine itself, it cannot be asserted against an insurer in an action brought pursuant to § 38a-321.

Section 38a-321 provides in relevant part: "Each insurance company which issues a policy to any person . . . insuring against loss or damage on account of the bodily injury or death by accident of any person . . . for which loss or damage such person . . . is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. . . ." In addition, if the judgment is not satisfied within thirty days after the date when it was rendered, then "such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment." General Statutes § 38a-321. "[T]he legislature's purpose in enacting the direct action statute was to remedy [t]he

---

[6] Although we hold that collateral estoppel is not a valid defense against the defendant insurer, it may be asserted against the plaintiff who previously litigated the matter. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991) (plaintiff collaterally estopped from relitigating issue of intent previously decided in criminal action); *Fernandez* v. *Standard Fire Ins. Co.*, supra, 44 Conn. App. 225 (plaintiff collaterally estoppel from relitigating issue of intent previously decided in tort action).

unfairness to the assured of contracts of insurance with provisions that the insurer should be liable only in cases where the assured had actually paid a judgment obtained against him. . . . The intention of the [statute] is to give the injured person the same rights under the policy as the assured . . . . Thus, the statute protects those injured by judgment proof insureds, by subrogating the injured party or judgment creditor to the rights of the assured against the insurer." (Citations omitted; internal quotation marks omitted.) *Brown* v. *Employer's Reinsurance Corp.*, 206 Conn. 668, 672, 539 A.2d 138 (1988).

"A party subrogated to the rights of an assured under [General Statutes] § 38-175 [the predecessor to § 38a-321] obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy. . . . Consequently, in order for one to proceed under § 38-175 [now § 38a-321], the insured must have had a viable statutory or contractual claim against the insurer . . . ." (Citations omitted.) *Brown* v. *Employer's Reinsurance Corp.*, supra, 206 Conn. 673.

One of the purposes of § 38a-321 is to protect a victim from a judgment proof tortfeasor. See id., 672. It allows the victim to bring a direct action for indemnification against the insurance company. The plaintiff, however, must first obtain a final judgment in the underlying tort action. If the plaintiff were able to assert collateral estoppel against the defendant insurer, he would be required to first litigate the tort action and then litigate the § 38a-321 action because the insured and insurer would never be in privity with one another.[7] This would

[7] "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373–74, 727 A.2d 1245 (1999). "Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand

render the provisions of § 38a-321 meaningless because there would be no "final judgment" for which the insurer would be "absolutely liable." Furthermore, because the victim is subrogated to the rights of the insured and, therefore, subject to any defense the insurer may have against the insured, the insurer's rights are also protected.

We now address whether Judge Levin properly concluded that the plaintiff's injuries were not caused by an occurrence as defined in State Farm's policy and, therefore, that State Farm was entitled to judgment as a matter of law. The court must first determine if Bullock would have had a viable contractual claim against State Farm based on the judgment rendered in the DaCruz action.

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 702, 569 A.2d 1131 (1990). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000).

"If . . . the words in the policy are plain and unambiguous the established rules for the construction of

statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 814. Thus, because the insured's interest would always be to convince the court that his conduct fell within the policy so that the insurer would be liable to pay the judgment under § 38a-321, and the insurer's interest would be the converse, there invariably could never be privity between the insurer and the insured.

contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citation omitted; internal quotation marks omitted.) *Schultz* v. *Hartford Fire Ins. Co.*, supra, 213 Conn. 702–703.

At the time of the injury, Curtis Bullock, as named insured, had in effect an insurance policy entitled "Your State Farm Homeowners Extra Policy."[8] By virtue of

[8] The provisions of the policy relevant to this appeal provided:

"SECTION II—LIABILITY COVERAGES

"COVERAGE L—PERSONAL LIABILITY

"If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

"1. pay up to our limit of liability for the damages for which the insured is legally liable; and

"2. provide a defense at our expense by counsel of our choice. . . .

"COVERAGE M—MEDICAL PAYMENTS TO OTHERS

"We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. . . . This coverage applies only:

"1. to a person on the insured location with the permission of an insured;

"2. to a person off the insured location, if the bodily injury:

\* \* \*

"b. is caused by the activities of an insured;

\* \* \*

"3. to a residence employee if the occurrence causing bodily injury occurs off the insured location and arises out of or in the course of the residence employee's employment by an insured.

"SECTION II—EXCLUSIONS

"1. Coverage L and Coverage M do not apply to:

"a. bodily injury or property damage:

"(1) which is either expected or intended by an insured; or

"(2) to any person or property which is the result of willful and malicious acts of an insured . . . ."

his relationship to the named insured, Michael Bullock also was an insured under this policy. The policy defines "occurrence" as "an accident . . . which results in: (a) bodily injury; or (b) property damage during the policy period. . . ." Accident is defined as "an event or condition occurring by chance or arising from unknown or remote causes; lack of intention or necessity; an unforeseen unplanned event or condition." Webster's Third New International Dictionary. Thus, if the plaintiff's injuries were not caused by an occurrence, as defined by the policy, the plaintiff cannot recover from State Farm pursuant to § 38a-321.

We conclude that because Judge Curran found negligence, the plaintiff's injuries were caused by an occurrence. Because the judgment rendered in the DaCruz action was based on negligence in part, Bullock would have had a viable contractual claim against State Farm. Therefore, the plaintiff may recover against State Farm pursuant to § 38a-321 as a matter of law.

The judgment is reversed and the case is remanded for further proceedings to determine the amount of damages attributable to State Farm because of Bullock's negligent conduct.

In this opinion the other judges concurred.