[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff Antonina Rosato (Rosato) on February 13, 1989, underwent elective surgery performed by Dr. Terisa Mascardo (Mascardo), including bilateral mastopexy with subpectoral breast augmentation (breast procedure or breast reduction and lift), rhinoseptoplasty to repair a deviated septum, and repair of diastasis recti (abdominal procedure). Following her release from the hospital on February 15, 1989, Rosato on February 20, 1989, saw Mascardo for her first post-surgical visit, at which time Mascardo informed Rosato that she had inserted silicone breast implants during the breast procedure. Although furious when she was told about the insertion of silicone implants, and demanding their immediate removal, Rosato continued under Mascardo's care through July, 1992. Mascardo never removed the implants.
Rosato commenced this action against Mascardo on November 19, 1992.[1]
The complaint as amended on June 1, 1993, includes two counts, which will be discussed below in greater detail. The first count claims damages for medical malpractice, and the second count alleges breach of contract. Both claims arise from the February 13, 1989, surgical procedures performed by Mascardo.
On June 14, 2002, Mascardo filed a motion for summary judgment on both counts, with a supporting memorandum of law, asserting that the claims alleged in the amended complaint are barred by the two year statute of limitation included in General Statutes § 52-584. Rosato opposed the motion for summary judgment, including with her opposition papers her own affidavit, a copy of the 2/13/89 consent for operative treatment, several pages of hand-written notes from office visits to Mascardo dating from 5/28/86 through 8/27/92, and a portion of Mascardo's December 15, 1999, deposition. Mascardo filed a reply brief, and the court heard oral argument on June 28, 2002. Counsel were invited to send post-argument letter briefs on cases cited during oral argument but not previously briefed. Trial is scheduled to begin on August 13, 2002.
"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A CT Page 8763 material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . (Citation omitted; internal quotation marks omitted.) DaCruzv. State Farm Fire Casualty Co., 69 Conn. App. 507, 511, ___ A.2d ___ (2002). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . ." (Citation omitted.) Nolan v. Borkowski,206 Conn. 495, 5001 538 A.2d 1031 (1988).
The parties agree that with respect to the first count, General Statutes § 52-584 is the applicable statute of limitation. Section52-584 provides in pertinent part that "[n]o action to recover damages for injury to the person . . . caused by negligence . . . or by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ." The parties also agree that Rosato discovered the injury about which she complains when Mascardo told her post-operatively in February, 1989, that the breast procedure had included the insertion of silicone breast implants.[2] The dispute between the parties on the first count concerns whether Rosato's post-operative medical treatment through July, 1992[3], tolled the three year repose section of General Statutes § 52-584.
It is well established in Connecticut jurisprudence that "the relevant date of the act or omission complained of, as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage. (Internal quotation marks omitted.) Blanchette v. Barrett, 229 Conn. 256,265, 640 A.2d 74 (1994)." (Internal quotation marks omitted.) Witt v.St. Vincent's Medical Center, 252 Conn. 363, 369, 746 A.2d 753 (2000). This language as quoted from Chief Justice Peter's 1994 Blanchette
decision assumes a latency period between the alleged misconduct complained of and a later event that triggers discovery of that alleged misconduct, at which time the damage is finally known. The statute of repose contained in General Statutes § 52-584 arbitrarily but purposefully terminates any such latency period after three years, regardless of whether the negligent act has been discovered.
The Connecticut Supreme Court has adopted a doctrine on which CT Page 8764 plaintiffs may rely to overcome the three year statute of repose. The "continuous treatment" or "continuing course of conduct" doctrine is fully explained by Chief Justice Peters in Blanchette v. Barrett,[4]
supra, 229 Conn. 274-76, as cited in Witt v. St. Vincent's MedicalCenter, supra, 252 Conn. 369.
The events considered by the supreme court in Witt v. St. Michael'sMedical Center, supra, began when the plaintiff Witt, who was experiencing persistent neck swelling, was referred by his family physician to a surgeon to perform a biopsy on an enlarged lymph node. The surgeon excised the node on September 26, 1983, and sent the node to the defendant physician, a pathologist. The pathologist examined the tissue the following day, and wrote a report stating his diagnosis as atypical lymphoid hyperplasia of the cervical lymph node. Witt relied on this diagnosis and did not pursue any further treatment for his condition. Eleven years later, Witt was diagnosed with non-Hodgkin's lymphoma. The treating oncologist obtained the slides developed from the 1983 node removal, as well as a copy of the pathologist's report. When he forwarded a copy of his report to the oncologist, the defendant pathologist noted that there was a concern in 1983 that Witt was developing a small lyphocytic lymphoma/CCL.
Witt filed a medical malpractice complaint in 1995, within two years of learning that he had cancer and five months after learning about the pathologist's written comment to his oncologist. Id., 754-55. The issue of timeliness came before the trial court on a motion for summary judgment, which was granted. That judgment was affirmed by the appellate court;Witt v. St. Vincent's Medical Center, 52 Conn. App. 699, 727 A.2d 802
(1999); and reversed by the supreme court in Witt v. St. Vincent'sMedical Center, supra, 252 Conn. 363.
The supreme court discussed the exception to the statute of repose as follows:
[A]n action commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations contained in § 52-584, regardless of whether the plaintiff had not, or in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period. . . . As we recently reiterated in Sherwood v. Danbury Hospital, 252 Conn. 193, 202-203, 746 A.2d 730 (2000), a statute of limitations or repose may be tolled under the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date. . . . CT Page 8765 [T]o support a finding of a continuous course of conduct that may toll the statute of limitations [statute of repose] there must be evidence of a breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to the commencement of the period allowed for bringing an action for such a wrong. Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . .
(Citations omitted; internal quotation marks omitted.) Witt v. St.Vincent's Medical Center, supra, 252 Conn. 369-70. The issue before the supreme court focused on the consequence of discovering the alleged misconduct after the three year statute of repose had run. The repose section of the § 52-584 statute of limitation is what was at issue in both Blanchette v. Barrett, supra, and Witt v. St. Vincent's MedicalCenter, supra.
The repose section is not at issue in Rosato's case. Rosato was informed within days after her February, 1989, surgery that silicone implants had been inserted in her breasts by Mascardo, and according to her own affidavit, Rosato demanded that the implants be removed immediately. There was no period as in Witt during which the truth was hidden from her. Rosato's reliance on the continuing treatment or continuing course of conduct doctrine is misplaced.[5]
Rosato discovered her doctor's allegedly negligent conduct within two years following the act sued upon, but chose to file suit more than three years later. Thus, her claims asserted in the first count of the amended complaint are barred by General Statutes § 52-584. Mascardo's motion for summary judgment on the first count is granted.
Mascardo has moved for summary judgment on the second count of the amended complaint on the basis that the allegations contained in the second count merely reallege the same facts on which the first count's negligence claim is based. While purporting to set forth a claim for breach of contract in Mascardo's performance of the breast and abdominal procedures, the second count according to Mascardo seeks to circumvent the two year statute of limitation controlling medical malpractice claims and should be barred as untimely. Rosato opposes the motion for summary judgment on the second count by pointing to the written agreement between CT Page 8766 the parties outlining the specific nature of the surgical operations to be performed, and the absence of any consent to the insertion of silicone breast implants.
There is no dispute that the second count does invoke contract language.[6] Moreover, a breach of contract claim may be heard in the same case claiming medical malpractice. Janusaukas v. Fichman,68 Conn. App. 672, 727 A.2d 744 (2002); see also Rumbin v. Baez,52 Conn. App. 487, 491, 727 A.2d 744 (1999) (breach of contract claim is a distinct claim that may arise from the same facts and may exist where the physician and patient contract for a specific result). Rosato's contract claim in this case is primarily directed to the alleged breach of the agreement to perform a procedure (breast reduction and lift without implants) rather than to achieve a specific result. Though the reported "malpractice" contract cases involve specific result claims, there is no reason to preclude a contract claim for failure to perform an agreed upon procedure. The motion for summary judgment on the second count is denied.
 CONCLUSION
The motion for summary judgment is granted as to the first count and denied on the second count. Trial on the breach of contract claim asserted in the second count shall commence with jury selection beginning Tuesday, August 13, 2002. A trial preparation order will be issued next week.
Robert F. McWeeny, J.