[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGEMENT
 I FACTS
The plaintiff insurance company brought this declaratory judgment action for determination of its rights to both defend and indemnify the defendant's former husband under its homeowner's policy in a suit brought by the defendant against her former husband, Matthew Berube. The underlying facts in that suit are that on the morning of March 5, 1999, Matthew Berube, upon returning from work, went into the bedroom where Christine Berube and their nine-week-old child were sleeping. Matthew Berube walked into the room with a modified twenty-two caliber loaded gun, with which he shot his wife in the back of the head. Allstate has now filed a motion for summary judgment in the declaratory judgment action, claiming:
CT Page 8956 (1) there is no "occurrence" as that is defined in the homeowner's policy between it and the Berubes; and
 (2) that even if there is an "occurrence," it was an intentional act which could not have been negligent and therefore the policy exclusion for intentional/criminal acts would operate to bar the claim.
 II DISCUSSION
A. Summary judgment
Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Id., 752. "[A] directed verdict may be rendered only where, on the evidence viewed in the light mostfavorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original; internal quotation marks omitted.) Id.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Id. "Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.)Fogarty v. Rashaw, 193 Conn. 442, 446, 476 A.2d 582 (1984).
B. The underlying allegations and evidence in Berube v. Berube
The crux of the plaintiff insurer's argument is that, under the allegations of the complaint in Berube v. Berube, as well as all of the facts set forth in the affidavits and counter-affidavits, Allstate is CT Page 8957 entitled to judgment as a matter of law. And that again turns precisely on the question of whether or not there are any facts from which it could be found that the conduct of Mathew Berube was negligent. The relevant facts are:
 1. Count one of the complaint in Berube v. Berube, which for these purposes must be taken as true, alleges that as Matthew Berube picked up the loaded gun and walked toward the bed, the gun fired. . . . The complaint then states that the shooting was caused by the negligence and carelessness of Matthew Berube because he lacked adequate training in the use and care of firearms; that he handled the gun in such a way as to cause it to discharge; and that he failed to unload it before bringing it into the bedroom.
 2. An affidavit completed by Christine Berube to secure a protective order in which she states that when Matthew came home that day, he got into bed with her and the baby and then she turned away from him, he held her and then she fell asleep. "The next thing I remember, I woke up to what felt like a frying pan racking me on the back of the head. . ." The affidavit continues on to state that since her husband's arrest, she has learned more about the incident, and has reason to question her safety and the safety of her children. Her affidavit demonstrates that there were no eyewitnesses to the incident.
 3. A transcript of Matthew Berube's sentencing hearing, after a nolo contendere plea, to charges of assault first degree with a firearm, risk of injury to a minor and alteration of a firearm,[1]
when Christine Berube opposed the plea bargain and said "there is enough evidence to support that Matthew acted with intent to cause physical injury to me, by means of discharging a firearm." Opposing this is Christine's present affidavit opposing summary judgment stating that "I did not give any statement that the act of shooting me in the back of the head was intentional by Matthew because I did not actually see him when the gun went off."
4. The memorandum of decision in the dissolution CT Page 8958 action between the parties in which the court finds "At first the plaintiff thought the shooting occurred accidentally. At approximately this time, she became pregnant with Kaitlyn. In November, 1999, she concluded that her husband had shot her intentionally."
Allstate argues there can be no doubt that Matthew shot his wife and that this was both an intentional and criminal act. Therefore, it claims there can be no coverage under its homeowner's policy. Christine Berube counters by saying that since she did not see her husband shoot her, she does not know whether it was intentional. Also, she claims that because of his nolo contendere plea, his criminal convictions cannot be treated as an admission by him nor or does his plea have any res judicata
effect. She relies on the recent case of Dacruz v. State Farm Fire Casualty Co., 69 Conn. App. 507 ___ A.2d ___ (2002), where the court upheld coverage where it found in the separate personal injury case brought that the insured had both committed an intentional assault and battery, and was also negligent and careless in using excessive and unreasonable force on the victim.
While Dacruz was in a different procedural posture than this case, the underlying "negligence claim having been concluded with some findings of negligence, nonetheless the court held that granting summary judgment in favor of the insurer in the insured's suit to recover insurance proceeds pursuant to Connecticut General Statutes § 38a-321 was error. Among the issues considered by the Dacruz court are the issues before this court in the instant case. Was there an "occurrence" as it is defined by the policy or, in this case, is there evidence from which a trier of fact could reasonably conclude there was an "occurrence"?
In the policy at issue in Dacruz, the contract of insurance defined occurrence as "an accident . . . which results in: (a) bodily injury . . ." Accident is defined as "an event or condition occurring by chance or arising from unknown or remote causes; lack of intention or necessity; an unforeseen unplanned event or condition." Dacruz, supra at p. 516.
In this case, the Allstate policy provides "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period resulting in bodily injury or property damage."[2] The policy appears not to define "accident," except to the extent that it defines what is excluded, that is not considered an "accident." It states that it does not cover losses for "bodily injury. . . . intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of an insured person."[3] So the court must determine whether, given the CT Page 8959 various conflicting statements made by Christine Berube under oath, a tier of fact could only find Mathew Berube's acts were intentional. This the court cannot conclude as a matter of law. A trier of fact could reasonably find that the act in question was an "accident," as this is to be interpreted in light of the policy language.
With respect to the nolo contendere plea, the court notes that: "a plea of nolo contendere is merely a declaration by the accused that he will not contest the charge, and even though followed by a finding of guilty and the imposition of a fine or other penalty, is not admissible, either as a verbal admission or an admission by conduct." Casalo v. Claro,147 Conn. 625, 632, 165 A.2d 153 (1960). Nor is it admissible to affect a party's credibility, as evidence of an arrest, or as res judicata
establishing that the plaintiff was engaged in a criminal act. Krowka v.Colt Patent Fire Arm Mfg. Co., 125 Conn. 705, 713, 8 A.2d 5 (1939),Lawrence v. Kozloski, 171 Conn. 705, 711, 372 A.2d 110 (1976).
The plaintiff insurer asserts that the unreported case of Fowler Hunting v. Granoff's Whsle. Fr., Docket No. CV 94 0704960 S, Superior Court, Judicial district of Hartford/New Britain at Hartford (Aurigemma,J., Nov. 3, 1995) supports its point of view that the conduct in question is adequate, pursuant to the policy definitions, to exclude the matter from the ambit of insurance overage and find that this criminal conduct is excluded. The court finds that Fowler does not support such implications as it related to statements made by the defendant in that case during the plea hearing as well as those by his counsel at the hearing for accelerated rehabilitation, not the plea itself.
When, in the context of a summary judgment motion, the court is faced with conflicting facts, resolution and interpretation of which would require determinations of credibility, summary judgment cannot appropriately lie. In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495,500, 538 A.2d 1031 (1988); Telesco v. Telesco, 187 Conn. 715, 718,447 A.2d 752 (1982). The court concludes that there are several such issues in this case, rending it inappropriate for summary resolution. For all the foregoing reasons, the court denies the plaintiff insurer's motion for summary judgment.
BY THE COURT
BARBARA M. QUINN, Judge